24488 Toyota Lease Trust v. Village of Freeport May it please the court, Keith Corbett of Harris Beach and Mertha on behalf of the appellate's, your honor, good morning. Your honor, we believe Lodestar has become a bit unwieldy. If this case went before four district judges, you may have a different attorney's fee report. We believe this case provides an opportunity for this circuit consistent with Supreme Court precedent and decisions of this court. Put some guardrails on Lodestar so that we could actually effectively have a determination of what the proper attorney's fee should be. Before we get into some of those guide rails and the opportunity of this case, I just want to point out that the village of Freeport does not have a scoff law policy. I say this for precedential effect because I have other cases where I currently represent Freeport. They have procedures in place to try and comply with state and federal law. We're not contesting what was written in this decision or argued by prior counsel, but I do have other matters where there is not a scoff law policy. Again, they follow state- I'm sorry, I'm confused. I have difficulty locating the so-called scoff law policy, and I'm concerned that we're having difficulty with our sound system here. I am too. Are we okay? Okay, let's try again. I have difficulty locating the scoff law policy, but it does seem that the village was taking the position that it could seize vehicles that had, potentially were illegally parked, but it wasn't limited to that, that had over $1,000 in outstanding tickets. Is that correct? Almost, almost, your honor, I'll give you- Without a warrant, it could just seize a vehicle for that. Without any public health or public safety, it wasn't blocking a road, but it had the registration show that it had over $1,000 in outstanding tickets, is that correct? That was the arguments in this case. What we are saying, and what we have said in all our cases, I understand I was not prior counsel in this case, is that if you have failed inspections, you have no insurance, if you have values of over a certain sum of money, doesn't have to be $1,000, under the vehicle and traffic law of New York State, they're entitled to remove those vehicles because they can pose a danger to the public. Without a warrant. Without a warrant, they could do so under the VTL. It poses a danger to the public to have a vehicle on the road that has more than $1,000 in tickets outstanding, because why? Mode of transportation, traffic, there's a, Village of Freeport's the second largest village in the state of New York. There are many vehicles that come in and out of that village. If there are vehicles that are not allowed to be operated, or there are vehicles that fines are so excessive, the Village of Freeport is removing them and allowing vehicle traffic to move through. But you hopped on an earlier point, your honor, there is no scoff law policy, and we can search this record. There was never, there was rules put in. But there was a practice. I thought you were just acknowledging that there was a practice of seizing vehicles without a warrant simply because they had over $1,000 in outstanding tickets. Is that correct? The practice is to follow New York State law, and there were processes put in place that assist the officers to follow New York State law. On the New York State law- I'm asking, did they do that? Was that their practice? In this case, this vehicle had over- That's what I'm interested in. In this case, this vehicle had over $1,000 in fines and was removed and impounded. That is correct. Without a warrant. Without a warrant, your honor. And does, what does the village do now? Does the village continue that practice? I was confused from- Thank you, your honor. I picked up this case, was confused a bit too. The village modified its policy because of this very case. And that is part of the reason why we don't believe the attorney's fees awarded are appropriate. They received $232 in exact damages, and the attorney's fees were $235,000. I'm aware of that, but I just want to focus on what the practice is now. Because my understanding is from the brief that the village's position is that it ceased doing that kind of of its own accord. And it provides, but that it could revert to its prior practice of seizing vehicles for $1,000 or more of outstanding tickets whenever it chose to. It provides process for after seizure relief. But it still takes the position that it can do that without a public health emergency or a safety blockage at any time. Is that correct? What is correct, your honor, is that the village of Freeport voluntarily upon receiving this no longer removes vehicles because of excess fines on the vehicles. If they have suspended registrations, if they do not have insurance, they can be removed under the VTL. We do believe what they did there was consistent with state law and federal law. However, because of this case, they stopped removing vehicles because of excessive fines. And that was voluntary. And the district court found that it was unlawful under the fourth amendment to do a warrantless seizure in those circumstances. In those circumstances, the reason we believe this case got unwieldy with lodestar fees is it was as applied. The district court did not declare that the village's process was unconstitutional. They declared that the village's process as applied to this case, key words in that decision, was unconstitutional. If the plaintiff, sorry, your honor. That gets to a point that I wanted to ask you about before you run out of time, which is the argument that you make is that they weren't really successful. All they got was $232. But you said they didn't get the injunctive relief they were looking for, but you returned the car. We returned the car, I believe. Before the court decided the case. So wasn't injunctive relief moot? At that point, as far as they had the car is one of the arguments you made, but that's because you returned it. Your honor, as we all know, when you're dealing with lodestar attorney fees, it's a degree of success. Limited success equal limited fees. All right, let's get to the issue of, you raised proportionality, you did not raise de minimis recovery. You said, well, in your brief at page 19, your reply brief, I read, you said, well, due to procedural complications, which I don't understand what those procedural complications were, given that you understood the totality of the damages they were seeking was $3,665 in depreciation.  And $2,583 in recovery of the lease because the people who were leasing this vehicle had not paid and they lost lease. Their claim was they could have leased the vehicle. What the plaintiff was seeking, yes. The court rejected the 2,500, unless my math is wrong, the total of what they were seeking is $6,248 in damages in attorney's fees of the amount they were seeking. So you were aware that the total damages they were seeking were de minimis compared to what they were seeking in attorney's fees at the time the motions were filed. So I don't understand why you couldn't have raised that claim and why you haven't forfeited it. Yeah, I don't believe we forfeited the claim. Again, prior counsel handled this case. What occurred there was we were arguing that any type of award should not be significant. They may not have cited to Henley, they may not have cited the Ferrara case. I don't think they have to cite them just to make a case. But my point is, I don't know what those procedural complications that precluded you from raising that argument were. When you were precisely aware what they were asking for in damages was minimal. And therefore, you could have raised that argument, but you didn't, correct? We believe we did raise the argument. We may not have done it as directly, or prior counsel may not have done it as directly. We believe the argument was made in that we were contesting the significant amount of attorney's fees that they were seeking or going to seek. Based upon the minimus amount, your Honor's own words, of the $6,000. So is it your position that in civil rights or enforcement law cases, for example, the degree of success obtained is measured only by the amount of damages ultimately recovered? Absolutely not, your Honor. That is not the position. The position we have is you have to take a totality of the circumstances. I think you should look at the value of what was received. You should look at the claims. They had five claims, 93 paragraphs in their complaint. They asked for four different types of relief throughout the case. They got one relief, success of one claim. What I'm saying to this court is one of the guide rails should be the amount of claims that you are actually successful on should allow you to obtain larger fees. Limited success, limited fees. So for example, a lot of these cases provide the shotgun approach. They bring a lot of claims, seek a lot of relief, a lot of motion practice to run up their attorney's fees. In this case, no one disputed the facts. In these cases, I have about 23 of them right now, no one disputes the facts. They say what we're doing violates the Fourth Amendment. We say it does not. What I'm saying to this court is in these specific cases, lodestar should be cut down to the claims. And the district court said it does violate the Fourth Amendment, and they won that. So how are they not successful? Because tomorrow, the village of Freeport could take the vehicle again if it violated state law. Because again, this was not an unconstitutionality of a process or a statute. It was unconstitutional as applied to this case. It didn't protect- The district court did not declare the process across the board or declare unconstitutional in any state statute or any regulation. It was this case- That is correct, Your Honor. It was unconstitutional taking. That is absolutely correct, Your Honor. For example, the post deprivation actions and the return of the car, and you called it, I think, the claim for $235,000 in attorney's fees in contrast to the $232 in depreciation damages before the car, a clear case of churning and lack of commercial judgment, which I understood to be raising the challenge to the lodestar award. That is correct, Your Honor. Is that correct? That is what we intended. And what I'm advocating for here is, again, lodestar has become unwieldy. Four judges may have four different attorney's fees. If we limit it to the claims, you have expedited dockets, less specific discovery. He could have brought one claim, been successful in one claim, and I would suggest he could have maybe had larger attorney's fees. And that would make the case more powerful. Yeah, but the truth is also in civil rights claims, and these are constitutional claims, often the recovery is nominal. But the declaration of constitutional rights serves a very important public purpose. It absolutely does. We don't know if this type of case fits that bill because of who the plaintiff is and what is occurring, but I would just say this. I am not standing here saying just because of $230,000 in damages, we're against the fees awarded. I am standing here saying that, coupled with the fact, the degree of success in the merits was minimal. Why was it minimal? Car could be taken tomorrow. The statute was not found unconstitutional. Everyone else in Freeport, if they have violations on their cars, they could be taken. The statute or process is not unconstitutional. Nothing has changed from before the case to now, except for these specific facts were unconstitutional. The other thing is- Why doesn't that give a sound basis for villages and other towing companies, for example, to think twice before they seize a private person's car for outstanding, for registration being out of date, and another kind of technical failure that doesn't cause a public health emergency. I think where we're having a difference of opinion is on the public health emergency. It's on the police officers to determine, if someone does not have a vehicle registration, it's not supposed to be driven on the road. If it doesn't have insurance, it's not supposed to be driven on the road. I'm talking about fines. I'm sorry, I thought you were referring- As we said earlier, based upon this case, the law worked. When this case was brought, the villager of Freeport no longer takes vehicles because of the fines. Only because of issues if they're true. How does that not make them successful? They effectively changed your client's town policy or village policy. Because the court did not order that they change the policy. The court did not oversee the change of the policy. It was voluntarily given, even in a settlement agreement, and in documents on the rule 68 that we sent to plaintiff's counsel, that were constructively rejected. That's the other point. Anything after that matter should not have been considered in the attorney's fees. This case came forward, villager of Freeport saw and said, you know what, voluntarily, we will not take cars for those costs anymore. But it didn't change as it relates to all the other factors. The villager of Freeport could- Voluntarily gave the car up, too, but was that voluntary when you were facing a lawsuit? That's the question, isn't it? The villager of Freeport routinely returns the cars when people turn up for them. As long as they could show it's valid registration, fines were paid, valid insurance. So it's no different than any other case. The villager of Freeport- Why did it take so many months and then bringing a lawsuit to get the car back? They requested it and it was refused, correct? They requested it, directed to come down to the in-pound yard to pick it up. And pay the fines and pay fees. It's my understanding- Was not their obligation, so. Understood your honor, it's my understanding no one ever came to actually pick up the vehicle. There was a request and a lawsuit filed immediately thereafter. So I- Thank you, counsel. You've reserved a couple minutes for rebuttal. Sure, thank you, your honors. Good morning, your honors. I may please the court, Nick Dustin for Toyota Lease Trust. I want to start by answering your honor's question about the policy at issue in this case. I don't know why we're discussing what it is now or what reservations are being made for some other litigation. But Judge Locke found in his summary judgment ruling that Freeport admitted the following policy. When someone owes more than $1,000 in parking tickets that are not adjudicated, they're just tickets. That's just an accusation. They would place that person's license plate into the village police LPR's, license plate readers. And wherever they found that car, they would seize it to make that person, for the express purpose of making that person pay those fines. That that violates the Fourth Amendment should be obvious even to non-attorneys. And yet it took this case being litigated all the way through to the end of summary judgment for the village to stop doing it. So that you and perhaps some colleagues have litigated similar cases like this around the state. On very similar looking complaints, making very similar actions. Yes, your honor. Complaints, yeah. In particular against the city of Yonkers and the county of Nassau. Both of those district courts agreed that this is inappropriate and violates the Fourth Amendment. And yet the relief, you made claims under the 14th and Fourth Amendment New York State Constitution. You sought declaratory relief, you sought replevin, which ultimately wasn't necessary. You sought a statement under GBL 349, which also was abandoned. And you ended up with a decision that was an as applied decision, as your friend on the other side points out. With regard to the Fourth Amendment seizure in this particular case. You got the car back through just discussions. And frankly, when I looked at this, I thought this is very limited relief. After a very extensive complaint that looked like it had been used before probably. When I saw the bill for $232,000 against the village, I really, my jaw dropped. So I need you to explain to me why you got significant enough relief to present a bill like that to the village. There's a few important points in there, your honor, so thank you for all of them. First of all, I'll just point out, this is a question of fact. And judge, the question here before this court is not whether your honor would have decided differently. But whether he abused his discretion in awarding something within the range of reasonable fees. But we have to look at the extent to which you prevailed on the claims that you made, correct? Yes, now, here's the other thing I want to point out. The complaint, like many complaints, has a whole host of relief that it seeks. However, unlike many of the cases on de minimis success, those cases involved attorneys actually spending hours on their unsuccessful claims. Here, Toyota won every argument it made. And Freeport lost every argument it made, except for the quantum of damages. The reason Toyota didn't get an injunction is that its attorney spent zero hours seeking an injunction. You got a Fourth Amendment ruling as applied. You didn't get a state statute declared unconstitutional, right? And you didn't get a ruling on the 14th Amendment. The reason as applied appears in this opinion is, I'm sorry, I want to answer one other part of your prior question. As the case law on fee applications points out, including the cases Freeport relies on, in large part, an attorney is reacting to forces beyond their control, like questions from the court, like I'm doing now, or like the actions of your adversary. And I'm not saying this to disparage counsel below, but as we pointed out in our fee application, and as Judge Locke was very familiar with, Freeport's defense was sort of all over the place. And a lot of the work that went into this, I completely agree with your honor. The complaint looks a lot like other complaints. The facts should have been undisputed, yet they were disputed. Issues came up at the end of the case. But they made a Rule 68 offer to you. And that seems to be, this whole litigation is exactly the type of case that I understand Rule 68 to want to be designed to avoid. So how is what you ended up getting better than what you were offered two years or so before? Absolutely, thank you, Your Honor. I think it's important to focus on what this case was about, and we've all been today discussing the Fourth Amendment. That Rule 68 offer does not mention the cessation of these illegal seizures. But that's not precedent for anyone else, right? That is just as to this case. So in terms of the judgment, wouldn't you have actually been better off with what they offered you, which was a post-seizure hearing process? That seems like a more useful thing to have as a policy. That might have cured the 14th Amendment problem. But no amount of hearing can cure the fact that the government shouldn't be seizing a vehicle in the first place, simply because it accuses someone of owing an unadjudicated amount of money. But you didn't get a ruling that what the government was doing was unconstitutional, generally. I want to be clear, my reading of Judge Locke's report and recommendation on summary judgment, there's two important points here. First of all, his use of as applied has to do with one of Freeport's sort of the box arguments that we were really challenging New York State law, even though we weren't. And that we should have put New York Attorney General on notice of the case, even though we weren't challenging New York State law. Excuse me, I have to interrupt for just a second, but I thought count two had to do with due process under the New York Constitution.  And you were focusing on, well, I guess that's right. Let me clarify. Freeport's argument was that we were challenging vehicle and traffic law 1224. Because they claim this was allowed by vehicle and traffic law 1224. That is not what we were claiming. We were claiming that it violated the federal constitution, and yes, the New York constitution as well. Thank you. Now, because of that argument, Judge Locke had to say, no, they weren't challenging a state statute on its face, which means no, we did not have to comply with the federal statute that would have had us put the Attorney General on notice. That's what he meant as applied. However, to have liability against Freeport at all, we needed to prove Monell liability. We needed to prove that this policy customer practice of Freeport caused the deprivation. There's absolutely no way to suggest that this holding addresses just one seizure of one car and reconcile that with Judge Locke's opinion that Monell liability was present. Because- I mean, how do we weigh that against what you were offered in a post-seizure hearing process? I mean, it still sounds better to me, but in any event, I'm not sure why it wasn't a valid Rule 68 offer. Is it because what you're saying, is that your best argument, that the relief you got as applied here was superior? No, actually, Your Honor, and thank you for pointing that out. So, on top of what I think our result was better, I think more importantly, this settlement proposal was not a Rule 68 offer at all for a variety of reasons. So, first of all, Freeport didn't even call it that consistently. They referred to it as a consent order. That would be at A557, one of counsel's conclusions. There's no confusion that it was styled as a Rule 68 offer. I hear your point. It was called that. It's a different language. And they also referred to it as following a settlement in another case, where we did settle without the municipality even filing an answer, because they voluntarily adopted this policy without making a spike for it. But, Your Honor, the most critical part here is that a judgment cannot bind the plaintiff. But that's exactly what this document purported to do. If it simply said, we will adopt the following hearing procedure and pay you this money, that might have been a different decision on our part. But what this document purported to do was bind my client. And no judgment of the court could bind a plaintiff absent a counterclaim or something that didn't exist procedurally here. Freeport, for example, bound Toyota to notify it and then negotiate for a period of time before seeking the court to help enforce compliance with this so-called judgment. No plaintiff is required to meet and confer and negotiate in good faith before seeking to enforce a judgment. If somebody's in contempt, you go to court and say they're in contempt, and the court rules dictate what the procedure looks like. Binding us to that is part of the settlement agreement, not a Rule 68 offer. On top of that, Your Honor, even though it was offering to pay $900 to Toyota for this case, it was also seeking Toyota to sign off on a hearing procedure that would guarantee that Toyota had to pay fees, release the village, et cetera, for all future seizures. And because it doesn't address the Fourth Amendment at all, it was tacitly asking Toyota to agree to a procedure that allows Freeport to perform these warrantless seizures with no valid exception. And my client's goal here was to put a stop to the wrongful seizures in the first place. Your Honor, with the remaining, sorry, go ahead. Was there any information about how frequently those seizures occurred in the village of Freeport? So, Your Honor, the whole idea of how widespread this is, it's obvious from the case law. As Your Honor pointed out, we've had to sue other cities for this. And I'll point, in my limited time here, to the concurrence and dissent in the recent Culley v. Marshall opinion that's cited in our papers. I'm just talking about in the village, because the village is wrongdoer here, in your view. Well, they just told Your Honor that they're the second largest village in the state and that they seize cars all the time. They were doing this rampantly. And once- I think they said they were the second largest village in the state, but I don't think they said that they were- Perhaps not the word rampant. And Your Honor, I know I'm over time, but can I just address this? Briefly. So, the point here is that Toyota chose to limit what arguments it made. It spent zero hours on these things that were allegedly unsuccessful. This court should encourage litigants to narrow the issue by making deals to mitigate damages, settling with parties, et cetera. By ruling in Freeport's favor, what this court would be doing is suggesting that every plaintiff would need to pursue its maximalist goals, lest it have a reduction in its lodestar. We look still at the course of the litigation here, and it went on way longer than- I mean, ultimately, you got $232 and you did not sell the car quickly after you got it back. The village returned it to you. I mean, this actually could have been settled if you didn't want to make the constitutional arguments. You could have settled it in the phone call to the village. We tried that, Your Honor. There's obviously no record of that, but I assure Your Honor, there were extensive discussions, and it takes two parties to settle. Okay, okay. Well, I didn't see that from the record. I'm interested to know that. Thank you for letting me know. Thank you. We'll hear about it. Thank you, Your Honor. Was the expenditure of counsel's time reasonable in relation to the success achieved? That's the United States Supreme Court in Hensley. Not was it reasonable in relation to what counsel below had done or ran them around. Was it reasonable in relation to the success achieved? Sorry to cut you off, but could you address the Rule 68 argument? That's where I'm going next, Your Honor. That's where I'm sort of stuck on here. Absolutely. Can you address your friend's points about why this wasn't a valid offer? Your Honor, I think you properly pointed out this was a proper Rule 68, regardless of how prior counsel titled it. We did put forward the offer. All those wonderful arguments that my colleague had made, they didn't even respond to the offer. They let the 14 days elapse, never even came back. They could have easily came back, had a negotiation, and maybe been able to settle something. They essentially let us put in a Rule 68, failed to respond, constructively denied it, and then wanted to seek significant fees. It is our position that under the Rule 68, we made the offer, we let the 14 days, we put everything forward. They didn't even acknowledge it nor come back to us. But frankly, I mean, Rule 68 has some technical requirements that you have to meet in order for it to qualify and set the clock running on other fees and so on. And this included several pages of a procedure, including discontinuance of the pending actions and general releases and so on. This doesn't look like a judgment to me. I mean, there's a figure that is, I guess, an offer to give the car back and the settlement payment. But it reads like a settlement agreement. The other Rule 68 offers that I've seen have actually looked like an offer of judgment. Here's the amount to input and here's what we're going to do. It gave the post-park procedure. It was kind of complicated and ambiguous, in my view. Why I'm not going to sit here and say it could have been drafted or formatted better to look more like a judgment. The contents of that very document do meet the elements of a Rule 68. There was the offer, there was the 14 days, we laid out exactly what our terms were. Normally, the purpose of Rule 68 is to get the parties to speak, to get the parties to see if they can resolve it. The district court, in its decision, said an offer of judgment will result in the clerk entering judgment against one party under Rule 68A, not a stipulation of dismissal. How is the district court wrong with that? Because we believe we did offer them a judgment. We gave them an opportunity to even negotiate that judgment so we could settle the case. But your documents didn't call for a judgment. They called for a stipulation of dismissal. If you look- So how did the district court get that wrong? Because if you look at the contents of the offer, we believe it does satisfy the judgment requirements. It didn't say judgment, no. Under what you offered, could the clerk have entered judgment? Yes. With a dismissal? I believe the clerk, yes, the clerk could have entered a judgment. Entered judgment against your client with a dismissal, a stipulation of dismissal. Yes. With prejudice, by the way. We believe that that document would have entitled the judgment to be entered meeting the requirements of Rule 68, yes. I would agree we did not title it as a judgment. I guess perhaps the court rules changed, and when the court receives a stipulation of dismissal in the future, it could just enter judgment based on reading the documents and saying, well, the winner here clearly is so and so. Your Honor. Or if they're paying, judgment shall enter. Is that what you're telling me? What I am saying to this court is the contents of that document satisfy Rule 68. Now, whether the clerk would accept it- I understand that's your argument, but that's not my question. My question is, to enter judgment, does the court need to receive documents that indicate that that is how the matter is being resolved, to accept a judgment and enter a judgment? I believe that is within the document we would have submitted. Now, will the clerk accept that or made us maybe draft a separate document? Possibly. But what you're asking, I believe everything's in there that would allow the court, under the local court rules, to submit that for judgment. I am not debating that it does not look like, or it was not titled judgment, but it does satisfy those requirements as our position. Thank you, Counsel. Thank you very much, Your Honors. Appreciate your time. I'll take the case under advisement.